UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DOUGLAS DRUGER,                          )
                                         )
       Petitioner,                      )
                                         )
    vs.                                 )          Case No. 4:20 CV 759 CDP
                                         )
UNITED STATES OF AMERICA,                )
                                         )
      Respondent.                      )

## MEMORANDUM AND ORDER

On September 12, 2017, following a six-day jury trial, Douglas Druger
was found guilty of conspiracy to distribute 500 grams or more of
methamphetamine (Count I), possession of a firearm in furtherance of the
drug trafficking crime charged in Count I (Count V), possession with intent to
distribute 500 grams or more of methamphetamine on December 15, 2017
(Count VI), possession of methamphetamine with intent to distribute on
August 17, 2016 (Count VII), and possession of a firearm in furtherance of a
drug trafficking crime on August 17, 2016 (Count VIII).  (Doc. 178 in
Criminal Case No. 4:16CR380 CDP-2).  On February 9, 2018, I sentenced
Druger to 480 months' imprisonment, which was the mandatory minimum
sentence allowed by statutes of conviction.  (Doc. 299 in Criminal Case No.
4:16CR380 CDP-2).

Druger appealed to the Eighth Circuit Court of Appeals, arguing that that there was insufficient evidence to support two of the three counts of his conviction.  (Doc. 447 in Criminal Case No. 4:16CR380 CDP-2).  The Eighth Circuit affirmed his convictions.  (Doc. 447 in Criminal Case No. 4:16CR380 CDP-2).  No petition for certiorari or rehearing was filed.

Druger then filed the instant pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, raising the following grounds for relief:

1) The magistrate judge denied his right to free speech when he relied on Facebook materials at the detention hearing;

2) The government failed to disclose evidence of wiretaps that were allegedly obtained after the expiration of the wiretap;

3) The government failed to disclose pole camera footage;

4) Trial counsel was ineffective for not moving to suppress evidence that was allegedly obtained from the wiretap after its expiration;

5) The superseding indictment did not have a valid signature by the grand jury foreperson;

6) Trial counsel was ineffective for failing to properly investigate and take depositions in the case;

7) Trial counsel was ineffective for failing to object to "character evidence" at trial; and

8) Trial counsel was ineffective in plea negotiations.

ECF 1.  Druger's motion will be denied without an evidentiary hearing because Grounds 1 and 5 are not cognizable in a § 2255 motion, Grounds 2 and 3 should have been raised on direct appeal and are therefore procedurally defaulted but ultimately meritless, and the ineffective assistance of counsel claims are conclusively refuted by the record.

## A. Need for Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up).  "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted).  For instance, "[a] district court need not hold an evidentiary hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States,* 905 F.2d 218, 220–21 (8th Cir. 1990) (citation omitted).  Moreover, in conducting this inquiry, courts may dismiss allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (cleaned up).  As Druger's claims are conclusively refuted by the record, no evidentiary hearing is required.

**B. Standard for § 2255 Relief**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir.2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek postconviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.").  A § 2255 motion "is intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir.1993) (cleaned up).

**C. Background**

The Eighth Circuit summarized the case against Druger as follows:

In March 2014, the Audrain County Sheriff's office began investigating Robert Reno for suspected trafficking of methamphetamine in and around Mexico, Missouri.  This investigation led to a warrant for a wiretap on Reno and an investigation by the U.S. Drug Enforcement Administration.  The wiretap revealed an ongoing drug operation in which Druger was participating.  Druger rented a bifurcated warehouse building and sub-leased

4

half of the building to Reno.  In December of 2015, the DEA obtained
warrants to search the warehouse, Reno's residence, and Druger's residence.
In Druger's residence, law enforcement found scales, pipes, and plastic
baggies, some of which tested positive for methamphetamine residue.  The
law enforcement officers also discovered $7,000 in cash in a safe and four
firearms—at least three of which were loaded – throughout the house.

In 2016, a state law enforcement investigation of Druger was also launched,
resulting in a second warrant to search Druger's residence.  During a sweep
of the house officers discovered 36.02 grams of methamphetamine inside the
toilet and related plumbing.  The officers found digital scales, baggies, drug
pipes, and other paraphernalia, along with a firearm in the bedroom.

A grand-jury indicted Druger on five counts related to drug possession,
trafficking, and the use of firearms in furtherance of drug trafficking.  A six-
day jury trial ensued.  At the close of the Government's case in chief, Druger
moved for judgment of acquittal on all five counts.  The district court denied
Druger's motion and the jury subsequently convicted him on all five counts.

(ECF 447 in Criminal Case No. 4:16CR380 CDP-2).  .

**D. Grounds 1 and 5 Are Not Cognizable in § 2255 Proceedings**

Ground 1 will be summarily denied as challenges to pre-trial detention are

not cognizable in a § 2255 motion.  *See Houser v. United States*, 508 F.2d 509,

513-516 (8th Cir. 1974) (claims held not cognizable include the excessiveness or

the denial of bail); *United States v. Bartunek*, 2022 WL 1443658, at *1 (D. Neb.

May 6, 2022) (petitioner cannot use § 2255 to relitigate pre-trial detention) (citing

*Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014)).

*Houser* also forecloses Druger's challenge to the sufficiency of the

superseding indictment in Ground 5.  508 F.2d at 514 (claims not cognizable

include defects in the indictment or the sufficiency of the indictment).  Ground 5

also fails because the superseding indictment <u>was</u> signed by the grand jury foreperson and filed under seal, (ECF 178 in Criminal Case No. 4:16CR380 CDP-2), with a redacted version (ECF 179 in Criminal Case No. 4:16CR380 CDP-2) filed in accordance with this district's practice (in compliance with the directives of the Judicial Conference of the United States and the E–Government Act of 2002) to omit identifying information about jurors or potential jurors from the public case file.  *See Littrell v. United States*, Case No. 4:07CV1707 CDP, 2009 WL 5220156, at *6 (E.D. Mo. Dec. 31, 2009).  Grounds 1 and 5 of Druger's § 2255 motion are denied.

## E. Grounds 2 and 3 Are Meritless and Procedurally Defaulted

In Grounds 2 and 3, Druger complains that the government failed to disclose evidence.  A § 2255 motion cannot substitute as an appeal and "is not available to correct errors which could have been raised at trial or on direct appeal."  *Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir. 1993) (cleaned up).  Druger's failure to raise these issues to the Eighth Circuit on direct appeal constitutes a procedural default of these claims.  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."  *Bousley v. United States,* 523 U.S. 614, 622 (1998) (cleaned

up).  Even if Druger could avoid the procedural default of these claims, however, they fail on their merits.

In Ground 2, Druger claims that the government used wiretap evidence obtained past the November 21, 2015 sealing Order based on his misapprehension of DEA Agent Ryan Lawyer's testimony at the suppression hearing.  During that hearing, Agent Lawyer testified about an *in-person* conversation with a courier at the airport that occurred after the November 21, 2015 sealing Order.  (ECF 123 at 58-59 in Criminal Case No. 4:16CR380 CDP-2).  He was not discussing Title III wiretap evidence, and he testified when questioned that the wiretap was taken down on November 21, 2015 and that there "was no additional wiretap evidence after November 21st." (ECF 123 at 40 in Criminal Case No. 4:16CR380 CDP-2). No wiretap evidence beyond November 21, 2015 was included in the affidavit supporting the December 17, 2015 search warrant or introduced into evidence during trial.  Ground 2 of Druger's motion is denied as meritless.

In Ground 3, Druger claims that the government failed to disclose pole camera footage.  On September 12, 2016, the Government provided a discovery letter to all counsel of record, including counsel for Druger, which included written notice of the existence of an external hard-drive which contained pole camera footage of surveillance from the investigation that was made available for inspection and review upon request of counsel. (ECF 11-1).  In his traverse, Druger

concedes that "the government did disclose the existence of pole camera footage
and made it available for counsel's review upon request." (ECF 17 at 8). Ground
3 of Druger's motion is denied as meritless.[1]

## F. Druger's Counsel Was Not Ineffective (Grounds 4, 6, 7, and 8)

In his remaining grounds for relief, Druger alleges that his trial counsel was
constitutionally ineffective. The Sixth Amendment establishes the right of the
criminally accused to the effective assistance of counsel. *Strickland v.
Washington,* 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance
of counsel, Druger must prove two elements. First, he "must show that counsel's
performance was deficient. This requires showing that counsel made errors so
serious that counsel was not functioning as the counsel guaranteed the defendant
by the Sixth Amendment." *Id.* at 687. When evaluating performance, "judicial
scrutiny . . . must be highly deferential." *Id.* at 689. The courts seek to "eliminate
the distorting effects of hindsight" by examining counsel's performance from
counsel's perspective at the time of the alleged error. *Id.* Second, Druger "must
show that the deficient performance prejudiced the defense." *Id.* at 687. This
requires him to demonstrate "a reasonable probability that, but for counsel's

---

[1] Druger goes on to state that the government does not provide evidence that the footage was
actually reviewed by counsel, which "further validates [his] claim of ineffective assistance of
counsel." Druger, not the government, bears the burden of proof on his ineffective assistance of
counsel claims.

unprofessional errors, the result of the proceeding would have been different." *Id.*
at 694.  The court need not address both components if Druger makes an
insufficient showing on one of the prongs.  *Engelen v. United States,* 68 F.3d 238,
241 (8th Cir. 1995).

In Ground 4, Druger argues that his attorney was ineffective for failing to
move for the suppression of wiretap evidence that was allegedly obtained after the
November 21, 2015 sealing Order.  As discussed above, no such evidence exists so
counsel cannot be ineffective for failing to seek its suppression.  Ground 4 is
denied.

In Ground 6, Druger complains that his attorney did not properly investigate
and take depositions in the case.  These claims relate to confidential informant
April Meyers (also known as April Breaux).[2]  Druger argues that his attorney did
not properly investigate the case because he failed to get reports which would have
shown that one of the local deputies was related to Meyers.  Druger also believes
that his attorney should have discovered additional evidence about Meyers's
criminal activities, including her arrests and that she was questioned (but
apparently never charged) in connection with a burglary at Druger's house.

---

[2] Counsel was well aware of the confidential informant long before trial and cross-examined law
enforcement officers at length about her reliability, how the confidential informants in this case
were corroborated, and the potential staleness of information contained in the warrant application
during the suppression hearing.  (ECF 123 in Criminal Case No. 4:16CR380 CDP-2).

Druger cannot satisfy either prong of the *Strickland* test because counsel knew about Meyers's brother and effectively cross-examined her about him during trial:

> COUNSEL: Good afternoon, Ms. Myers. You have a brother named Steven Kennemore; is that correct?
>
> MEYERS: Yes.
>
> COUNSEL: How is Mr. Kennemore employed?
>
> MEYERS: He works for the Sheriff's Department.
>
> COUNSEL: Audrain County Sheriff's Department?
>
> MEYERS: Yes.
>
> COUNSEL: Do you have any knowledge whether he took part in any of the search warrants for Mr. Druger's house?
>
> MEYERS: I'm not sure.
>
> COUNSEL: He's been employed at the Sheriff's Department for quite some time; is that right?
>
> MEYERS: Yes.

(ECF 328 at 169-70 in Criminal Case No. 4:16CR380 CDP-2).

Meyers's extensive criminal record was disclosed to counsel in the government's disclosure letter and to the jury on direct examination during trial. Contrary to Druger's contention in his traverse, ECF 17 at 12, these disclosures included her arrests in 2016 and 2017.  (ECF 328 at 108-113 in Criminal Case No. 4:16CR380 CDP-2).  Meyers also testified about the details of her cooperation

agreement on direct examination.[3]  (ECF 328 at 112-113 in Criminal Case No. 4:16CR380 CDP-2).

Regarding her status as an informant, counsel extensively cross-examined Myers about her pending charges, the nature and extent of her cooperation, and her "number one goal" to "get home to her kids."  (ECF 328 at 170-177 in Criminal Case No. 4:16CR380 CDP-2).  Although Druger characterizes Meyers as "the main suspect" in the burglary of his home, the documents he submitted in support of this claim (ECF 17-2 at 2-29) do not demonstrate that she was ever charged with this crime.  Moreover, they do not demonstrate that counsel's cross-examination of Meyers -- which brought out her potential bias or motivation for cooperating and testifying -- was ineffective.  Under these circumstances, Druger cannot demonstrate either deficient performance or any resulting prejudice to Druger from these alleged errors.[4]

Druger also believes that defense counsel should have taken the depositions of all deputies involved in the investigation to discover evidence that could be used to impeach them at trial.  However, this claim fails because depositions in federal criminal cases are permitted only by order of the Court to preserve testimony for

---

[3] These details were also disclosed by the government in advance of trial.  (ECF 214, 215, 216, 217, 218 in Criminal Case No. 4:16CR380 CDP-2).

[4] Druger does not identify any other discovery, witnesses, or information that his attorney would have discovered had he conducted additional investigation.

trial in cases of "exceptional circumstances" and "in the interest of justice."  *See* Fed. R. Crim. P. 15(a).  They are not discovery tools as in civil cases.  As counsel was precluded from taking any such deposition absent leave of court, and the investigative witnesses testified both at the suppression hearings and at trial, Druger cannot demonstrate that counsel was ineffective for failing to seek their deposition testimony or that he was prejudiced by any such alleged error.  For these reasons, Ground 6 of Druger's motion is denied.

In Ground 7, Druger argues that his attorney was ineffective for failing to object to "character evidence" at trial.  However, the government did not present any type of character evidence during the trial of Druger, so the claim is denied to the extent it challenges the admission of character evidence.

The evidence Druger misconstrues as character evidence is actually testimony from DEA Special Agent Ryan Lawyer about the use of coded language on the wiretap.   Counsel filed a motion to suppress the Title III wiretap, which was ultimately denied by the Court, and he also objected to the use of the wiretap transcripts before trial.  (ECF 202, 203 in Criminal Case No. 4:16CR380 CDP-2). Counsel's objections included lack of foundation for certain transcripts and the agent's interpretation of coded language.  (ECF 202 in Criminal Case No. 4:16CR380 CDP-2).  The government responded to counsel's objections by making his suggested changes to the transcripts in all but two instances, and I

denied the remaining objections during the pretrial conference held on August 21,

2017 because "it's allowable under the law of the Eighth Circuit for them to

basically translate the – the wiretaps."   (ECF  510 at 18 in Criminal Case No.

4:16CR380 CDP-2).

Counsel's failure to object at trial to the interpretation of code language

cannot constitute ineffective assistance because the agent's background and

experience were established with an appropriate foundation:

> AUSA: Do you have experience interpreting drug, coded language over telephone calls?
>
> WITNESS: I do.
>
> AUSA: And what is coded language?
>
> WITNESS: Coded language is the use of indiscriminate terms to replace terms that are incriminating. So what they do is they replace the incriminating term with a nonincriminating term, or a lot of times, they will replace the incriminating term with just a nondescript term, such as replacing the incriminating term with 'it' or 'that.'  Basically, a lot of times, what will happen is the noun or the subject of the sentence is just simply missing or referred to as 'it' or 'that.'
>
> AUSA: And how would you know when people are using coded language?
>
> WITNESS: Most of the time, the conversation doesn't make sense. It's not a normal conversation that someone's going to have during a normal phone call.

(ECF 327 at 133-134 in Criminal Case No. 4:16CR380 CDP-2).  As such, the

testimony was properly admitted.  *See United States v. Placensia*, 352 F.3d 1157,

1164-65 (8th Cir. 2003) (law enforcement agents may testify about coded language

on wiretaps to assist jury).  Under such circumstances, Druger cannot demonstrate
deficient performance as counsel's failure to make a meritless argument does not
constitute ineffective assistance as a matter of law.  *See Rodriguez v. United States*,
17 F.3d 225, 226 (8th Cir. 1994).  Moreover, given the extensive evidence in the
record substantiating Druger's role in the conspiracy to distribute
methamphetamine and possess firearms in furtherance of drug trafficking crimes,
Druger cannot that he was prejudiced by counsel's alleged failure to object and
keep the "character evidence" out at trial.  Ground 7 of Druger's motion is denied.

Finally, in Ground 8 Druger claims that defense counsel was ineffective in
connection with the plea offers made by the government.  Although an attorney's
advice in plea negotiations can give rise to an ineffective assistance of counsel
claim, *see Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012), in this case Druger does
not claim that his attorney advised him to reject any of the plea offers made by the
government, or that he even based his decision on advice given by counsel.
Instead, Druger acknowledges that he made the decision to reject the plea offers
made to him because he believed his guidelines range was "unreasonable," (ECF 1
at 34), he did not want to waive an evidentiary hearing by pleading guilty (ECF 1
at 35), he was unable or unwilling to cooperate with the government (ECF 1 at 34),
he did not fully appreciate the evidence against him, and he did not like the later
plea deals made to him.  (ECF 1 at 38).

Druger's personal belief that his guidelines range was "unreasonable" cannot be attributed to counsel, nor can his unwillingness or inability to cooperate with the government. Although Druger may not have wanted to waive an evidentiary hearing, pleading guilty waives numerous rights, and Druger's allegations only demonstrate that counsel provided him with accurate advice concerning the entry of a guilty plea. That Druger did not like the (accurate) advice and chose to reject the plea offers made to him on that basis cannot be imputed to any ineffectiveness on the part of counsel. Nor can counsel be blamed that subsequent plea offers made by the government were not as favorable as previous offers made before additional charges were added.

To the extent Druger argues that he rejected the plea offers because he did not understand the evidence against him because of counsel's previously discussed trial preparation, the claim fails as counsel's pretrial preparation was not inadequate or ineffective. To the extent this argument relates to Druger's pretrial complaint that he did not have sufficient time with counsel to discuss his case, I specifically addressed (and resolved) Druger's complaints about counsel during the June 14, 2017 pretrial hearing as follows:

> DRUGER: Well, [counsel] Jason [Korner] actually come and seen me yesterday, and he did finally give me the documents that I've been asking for so I could review them. Basically, I was just concerned because -- with the lack of communication. He's only been out to see me now three times since I've been incarcerated for nine months, because of the detention order was denied. Basically, I didn't have any resources to make myself aware of

anything that was going on with my case whatsoever.  I didn't have none of the discovery.  I basically -- I felt -- me being detained and with him with the lack of communication, I was basically just sitting there.  And everything was last minute, you know.  Like, I guess, whenever --it would be, like, the last time I talked to him was right before pretrial motions, and then that's when it was, you know, we can do this, this, and this, and, like, I was put on the spot to make a split decision that could affect the rest of my life, without ample time to prepare myself to be making educated decision in the matter.

THE COURT: Well, so have you and Mr. Korner worked out whatever problems you were expressing about him?

DRUGER: Like I said, we met yesterday for about an hour. He brought the documents and stuff; so I really haven't had time to review most of that stuff, because even being as I'm detained, we only have access to a law library on a kiosk, which is we can only be on there for thirty minutes at a time.  So I've really not had much time to do much research or anything so I could ask very many questions of him or anything since then.

THE COURT: Well, so -- I mean, here's the deal. This case is going to move forward.

DRUGER: Yes.

THE COURT: You know, if you're going to make complaints about your lawyer and say you think he's not doing a good job for you, I have to know about that and fix it.  And the way I would fix it -- if, in fact, you insist that you can't get along with him or you think he's not doing a good job for you -- is I would have to find another lawyer for you if you ask me to do that. Now, that other lawyer would be coming into it cold. He would have to start from scratch. And I don't know.  He might or might not give you the same advice Mr. Korner is giving you.  He might give you different advice. I don't know. It would be a different lawyer. But, you know, you can't just like -- if you're going to just complain generally and like, "Well, I'm just going to make a bunch of complaints, but I'm not going to ask for a new lawyer; I'm going to wait and see what happens, and then when I -- you know, my case ends up, if I plead guilty or maybe if I go to trial and I'm convicted and I don't like what's happening to me, then I'm going to come back and complain about my lawyer later and say that my constitutional rights were violated; so I'm just going to make a little record here so that, you know, I'll

have record that I complained. Well, we're not going to do that. We're either going to fix it, or we're going to – you're going to tell me that you want to go forward with Mr. Korner.  I can't have it just in between. You understand?

DRUGER: Yeah, I understand that.  Personally, I mean, I have no personal grudge against Mr. Korner. I mean, if we can work out the lack of communication problems and, you know, and the going through my mother for conversation, I mean, whether -- and where he actually comes and visits me and discusses things with me, I don't see no problem proceeding with Mr. Korner.

THE COURT: Well, then what I'm going to do is it sounds to me like you are choosing -- well, you've told me you are choosing to go forward with Mr. Korner. It sounds like you all are communicating now sufficiently and like you have received, you know, the discovery that does exist, at least so far. And so I'm going to -- we'll end -- this will be the end of this in camera examination, and you will proceed with Mr. Korner.

(ECF 175 at 27-28 in Criminal Case No. 4:16CR380 CDP-2).  As I specifically warned Druger, he cannot now be heard to complain about his communications (or lack thereof) with counsel after being given (and rejecting) the opportunity to request new counsel.  Moreover, Druger identifies no specific information that his attorney failed to discuss with him up to that point that would have impacted his decision about whether to plead guilty.

To the extent Druger bases his claim on his complaint about counsel filed on the eve of trial, the claim is denied.  In response to Druger's later complaints about counsel's lack of communication and his request to represent himself at trial, I held an ex parte conference with Druger and counsel on the morning of the first day of

trial.[5]  In that conference, counsel laid out the extensive evidence that was provided

to him by the government and then shown to, or discussed with, Druger.  While

Druger did not listen to the 17,000 wire intercepts provided by the government, he

was shown the DEA field reports, text messages, the government's disclosure

letter, the Jencks material, and grand jury transcripts of DEA Special Agent Ryan

Lawyer's testimony, which lays out in detail every aspect of the government's

case, and counsel discussed all the evidence with Druger.  When I asked Druger

what discovery he was concerned he had not seen, he admitted that he was

complaining only because he "wasn't for sure what else had been given to

[counsel] that [he] hadn't received" and that he believed the government's

evidence "was more speculative than, rather, facts . . . ."  Despite Druger's failure

to identify any specific evidence he had not been shown before trial, the Court

delayed the start of the trial for several hours so that Druger could again review all

the evidence the government intended to introduce at trial.  Druger did so, and then

withdrew his request to represent himself at trial.  This happened the day before the

*Frye* hearing on the second day at trial, during which the government laid out its

final plea offer and defendant Druger confirmed that, after having sufficient

opportunity to discuss the plea offer, he rejected it.  (ECF 325 at 116 in Criminal

---

[5] (ECF 219, 324 in Criminal Case No. 4:16 CR 380 CDP-2.)  The *ex parte* portion of the
transcript was not requested by the parties and has therefore not been filed.

Case No. 4:16CR380 CDP-2).  Any argument that counsel was ineffective during

plea negotiations because Druger was unaware of the evidence against him is

conclusively refuted by the record.

Moreover, Druger does not – and cannot—argue that the plea deals were not

accurately or timely communicated to him, as any such claim is also conclusively

refuted by the record.[6]  I held four *Frye*[7] hearings with Druger in the course of this

case to discuss each of the five plea offers made to him, and at each hearing,

Druger confirmed that he understood the terms of the plea offer but that he made

the decision to reject it.  At the first hearing on June 14, 2017, I held the following

colloquy with counsel and Druger about plea negotiations:

> COURT: Were there any offers of concessions made to Mr. Druger?
>
> AUSA: Yes, Your Honor. In January of this year, 2017, defense counsel,
> Mr. Korner, reached out to me and asked for a draft plea to be sent for
> consideration.  That plea contemplated dismissing Count 6 against Mr.
> Druger, which was possession with intent to distribute methamphetamine – I
> believe it was on or about August 26 of 2016 -- and pleading guilty to Count
> 1 of the conspiracy.  Pursuant to the indictment and in line with that, the plea
> contemplated a ten-year mandatory minimum for over 500 grams of
> methamphetamine distributed in that conspiracy.  The plea particularly
> contemplated approximately 3,517 grams of actual methamphetamine,
> which was seized in the case, and that puts him at an offense level of

---

[6] Although Druger argues in his traverse that one offer was not given to him in writing, the
transcript demonstrates that the offer was not a formal one made in writing, but that counsel
nevertheless communicated it to Druger, who rejected it.  (ECF 206 at 2-6 in Criminal Case No.
4:16CR380 CDP-2).

[7] So named after the Supreme Court's decision *Missouri v. Frye*, 566 U.S. 134 (2012), *Frye*
hearings are designed to make a record of formal plea offers made to a defendant and the
defendant's acceptance or rejection of such an offer.

approximately 36, Judge, and a two-point increase for weapons possession, which was found at Mr. Druger's house, and also a weapon that was found at Mr. Reno's house that was registered to Mr. Druger.  So at an estimated offense -- that puts him at an estimated offense level of 38.  Without acceptance, that puts him at 235 to 293 months, which are obviously very high guidelines, Your Honor.  And I will just mention that after trial, if we went to trial in this case, that's what the Government would be likely to ask for, is a guideline range of sentencing.

THE COURT: And that's if he's in Criminal History Category No. 1?

AUSA: That's correct, Judge.

THE COURT: Okay.

AUSA: That plea offered acceptance of responsibility to Mr. Druger; so he would be at approximately, I believe, level --

THE COURT: Well, if it's 38 minus 3, it would be 35; right?

AUSA: Correct.  I believe that's right, Judge.  That does not include points for organizer/leader, which I think could potentially be brought here, but was not included as an enhancement in that plea.  And I also wanted to bring to the Court's attention, Your Honor, that in relatively recent plea negotiations with Mr. Druger's codefendant Robert Reno, we offered a plea to a lesser included offense by which there would be no mandatory minimum considered in the plea agreement.  And so in the interest of fairness and consistency in this case, we would like to offer that same plea to Mr. Druger as well.  However, he would still be -- and I also mentioned that to Mr. Korner just as of this morning.  But the same amount of methamphetamine involved in the case would still be contemplated; so it would still be approximately 3,517 grams.

THE COURT: So the guidelines would remain the same, but what you're saying is the mandatory minimum would not be there.  This is a new offer, I assume.

AUSA: Yes, Your Honor.  That's correct.  It would still be the same guidelines.  The guns would still apply.  It would still be minus 3 for

acceptance.  And we would still allow the defendant to argue for below the guideline range.

THE COURT: Yeah, okay.  Right.  So the indictment in the case charges, with regard to Mr. Druger, as well as with the codefendant Reno, is -- as opposed to the other three -- that, under the conspiracy, that the amount reasonably foreseeable to him is 500 grams or more, which does carry a mandatory minimum sentence of ten years and a maximum of life, a supervised release term of not less than five years.  So in the absence of the mandatory minimum, just the straight conspiracy, the statutory range would be not more than 20 years in jail and a supervised release term of not less than three years.  So what you're saying is, by taking out the, you know -- by not -- by allowing a lesser included that would not include the mandatory minimum, it could -- he would still be in the same, you know, looks like -- assuming he's Criminal History 1, that same 168 to 210 months, but there would be room to argue or request a variance.

AUSA: And as you stated, Your Honor, it would cap the guidelines at 20 years.

THE COURT: Yeah. It couldn't go above 20 years.

AUSA: Correct.

THE COURT: And under the current charges and what the Government is saying it expects it would be able to prove at trial, even without any enhancement for acceptance and even assuming he's in a Criminal History Category 1, that would be 235 to 293 months, and there would not be any 20-year maximum.  It would be a maximum of life. So it could go -- you know, 293 is well above 240, which is 20 years.  Yeah.  So okay.  So I understand. So there's a new offer, but there's also an old offer.  So I guess the first question, setting aside this new offer that's just been made, Mr. Korner, the prior offer that Mr. Dowd just described, is that something you did communicate to your client?

COUNSEL: Yes, Your Honor.  Mr. Dowd provided that offer to me in writing.  I did provide that offer in writing to Mr. Druger on an in-person visit to the jail.  We discussed it, and he decided to not accept that offer.  The new offer, obviously, as Mr. Dowd said, was just from this morning and –

THE COURT: Yeah. You all haven't had time to discuss that yet.  I understand that.

AUSA: Right.

THE COURT: So, Mr. Druger, with regard to the prior offer, not this one that they're talking about just this morning, but the earlier one where you, you know, you would get the acceptance of responsibility levels off, did Mr. Korner explain that offer to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you reject it?

THE DEFENDANT: Yes, Your Honor.

(ECF 176 at 9-13 in Criminal Case No. 4:16CR380 CDP-2).

On July 7, 2017, I held a second *Frye* hearing.  At that time, I asked defense counsel to outline the plea offer that took place just before the superseding indictment:

COUNSEL: Your Honor, that was a plea to the original Indictment that was actually a lesser included that did not include the ten-year mandatory minimum, allowing the Defendant to plead to that.  And then without that ten-year mandatory minimum in place, the Defendant could, you know, argue for a below-guideline sentence at that point.  That was my understanding of the plea offer that was made.  It was accepted ---

THE COURT: And there wasn't -- there wasn't a 924(c). There wasn't a gun charge on that one.

COUNSEL: That's correct. There were no ---

COUNSEL: Right.

COUNSEL: There were no gun charges prior to the Superseding Indictment. The offer was extended to us orally, but I did have Mr. Dowd also put that in

22

an e-mail so that I could specifically relay it to Mr. Druger.  I did relay it to Mr. Druger when I visited him at the jail, and he did reject it.

THE COURT: And, Mr. Druger, is it correct that your lawyer did tell you about that offer from the Government and that you rejected it?

COUNSEL: Yes.

(ECF 186 at 12-13 in Criminal Case No. 4:16CR380 CDP-2).

On August 21, 2017, the Court held a third *Frye* hearing to discuss the plea offer made to Druger after the superseding indictment was filed.  At that time, Druger again reiterated that he understood the maximum penalties that he was facing and the terms of the offer, he had sufficient time to discuss the offer with counsel, but that he "very clear[ly] [] was not interested in any agreement with the government" because he wanted to go to trial:

AUSA: -- for purposes of this hearing.  That after the Superseding Indictment was filed, the Government made an offer whereby the Defendant, Mr. Druger, could plead guilty to Count 1 and Count 5 of the Superseding Indictment.  Count 1 was the conspiracy to distribute methamphetamine which was charged as a ten-year mandatory minimum, and Count 5 was a 924(c) count, possession of a firearm in furtherance of a drug trafficking crime, which carries a 60-month or a five-year mandatory minimum consecutive to Count 1.  And we would dismiss all of the other counts involved in the case which would be -- Count 6 was possession with intent to distribute over 500 grams. Count 7 is possession with intent on a specific date, August 17th, 2016; possession with intent of methamphetamine.  And Count 8 was a 924(c) that was attached to Count 7.  We would dismiss all of those counts, Your Honor.

THE COURT: Okay.  And so as I understand it, just to run through these, so Count 1 has a mandatory minimum of ten years and a maximum of life.  And then Count 5 -- Count 5, is that what you said?

AUSA: Count 5, Your Honor, yes.

THE COURT: Hold on.  Yeah, it would be the other one that you would be -- your offer was, and that one has the 60-year consecutive required sentence.

AUSA: Sixty -- Sixth months.

THE COURT: I'm sorry; of course.  Yeah, 60 months.  And then the other counts that would go to trial, if the Defendant does not accept this offer, which I understand he hasn't, Count 6 has a ten-year mandatory minimum and a maximum of life. Count 7 has a maximum of 20 years.  And then Count 8, would -- If he's convicted on both Counts 5 and 8, then the second count carries a requirement of a 25-year consecutive sentence, correct?

AUSA: That's correct, Your Honor.

THE COURT: If he's only convicted of either one of those, then it's just a five-year consecutive.

AUSA: That's correct, Your Honor.

THE COURT: All right. So, Mr. Druger, do you understand the maximum penalties you're facing?

THE DEFENDANT: Yes.

THE COURT: And the minimums, obviously.  Okay.  So were there any agreements that were being offered regarding the advisory guidelines range or any recommendations?

AUSA: Your Honor, my understanding is that it's approximately 3500 grams of methamphetamine that was seized in the case, and we would hold Mr. Druger responsible for the amount of methamphetamine that was at least seized in the case.  That would not necessarily be including the totality of everything that could be contemplated in the conspiracy to distribute the methamphetamine.  But if he did plead guilty, we would just hold him to the actual amounts that were seized in the case which is, again, approximately 3500 grams which would put him at a Level 36.

THE COURT: Okay. [Counsel], is that an accurate summary of what was communicated to you by the Government?

COUNSEL: Yes, Your Honor. [The AUSA] and I had discussions about that exact framework or deal. I never took it as a formal plea offer that was taken, but I explained all of that to my client, that that was essentially, more or less, on the table and something that could be worked out with the Government, if he would so choose to move forward with that. **As with prior plea offers, Mr. Druger made it very clear that he was not interested in any agreement with the Government; that he wanted to proceed towards trial in this case.**

THE COURT: Okay. And, Mr. Druger, I don't want to ask you about any specific conversations you had with your lawyer. I just want to make sure. **Did you have enough time to discuss all these issues with him?**

THE DEFENDANT: **Yes.**

THE COURT: **And is it correct that you did not want to -- you have refused or rejected that offer from the Government?**

THE DEFENDANT: **Yes.**

THE COURT: **And you wish to go to trial**.

THE DEFENDANT: **Yes.**

THE COURT: Okay. We'll go to trial then. And – So why don't you have a seat, Mr. Druger, and the lawyers and I will go over a number of matters that have been provided.

(ECF 206 at 2-6 in Criminal Case No. 4:16CR380 CDP-2) (emphasis supplied).

Given that he "very clearly" "was not interested in any agreement with the government," Druger cannot demonstrate that he would have accepted this (or any other) offer and pled guilty but for the alleged ineffective assistance of counsel, so

25

his ineffective assistance of counsel claim necessarily fails.  *See Lafler*, 566 U.S. at 1644.

On the second day of trial, I held a fourth *Frye* hearing to discuss the final plea offer made to, and rejected by, Druger as follows:

COUNSEL: I think we need to make a *Frye* record.

THE COURT: Okay.

COUNSEL: There was additional plea negotiations between the Government and the Defendant.

THE COURT: All right. You all want to tell me what those were?  And, Mr. Druger, we did this once before, but what we'll do again is I'm going to ask the lawyers to say what the -- what the concessions proposed were and what – and whether – I'm just going to ask did you have a chance to discuss it with your lawyer and did you reject it.  I'm not going to ask you anything you said to your lawyer directly.

COUNSEL: Your Honor, through negotiations, the Government extended an offer.  It would be 240 months.  It would be upon acceptance of that offer by the Court that they would dismiss the second 924(c) count, which is the 25-year mandatory minimum on that second count. I discussed that specific deal with my client.  My client has rejected that deal and chose to continue on with the trial.

THE COURT: Okay. And, Mr. Reilly or Mr. Dowd, is that what you all had proposed?

AUSA: That's what we proposed, Judge, what it would -- what it would entail.  I'll leave it open until 5:00, Judge.  It sounds like he's rejected it, but -- but it's a -- would be a plea to Count I, the conspiracy count of the indictment, and Count V, the first 924(c) count.  It will probably encompass putting his relevant conduct in a range of somewhere near 15 years, a consecutive five years for the 924(c) count, and Count V, and then we would dismiss all other counts at the time of sentencing were the Court to sentence Mr. Druger here to 240 months' imprisonment, and that's the offer.  Mr.

Korner approached us and asked us if there was any offer this morning, and I went down and consulted with -- with -- I talked to Mr. Dowd, and I consulted with my supervisor.  That's the offer that remains open until 5:00 today.  That would mean he would need to sign a plea agreement and accept this in front of the Court this afternoon, Your Honor. And that's – that's it.

THE COURT: Okay. So, Mr. Druger, did you have a chance to discuss this with your lawyer?

THE DEFENDANT: Yes, I did.

THE COURT: And he said that you wish to reject this offer. Is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. That's fine.  And then, you know, I am available today if there should be any change in decision, although it sounds like there's not going to be, but if there -- you know, I'll ask you that again tomorrow morning just to make the record. I may forget.  So remind me, but, you know, if you should -- you know, if you need me, I'll be here, but it sounds like that's probably not going to happen.  All right. I'll see you all in the morning at 9:00 a.m.

(ECF 220 at 114-16 in Criminal Case No. 4:16CR380 CDP-2).

The record conclusively demonstrates that counsel timely and accurately communicated each of the government's plea offers but, after adequate discussion and consultation with counsel, Druger himself made the decision to reject each of the plea offers and proceed to trial.  There is no evidence of deficient performance in connection with plea negotiations.  As much as Druger may now regret his decision not to accept a plea deal, it cannot form the basis of an ineffective assistance of counsel claim.  Ground 8 of Druger's § 2255 motion is denied.

## G. I Will Not Issue a Certificate of Appealability

As Druger has not made a substantial showing of the denial of a federal constitutional right, I will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Douglas Druger's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Druger has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accord with this Memorandum and Order is issued this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2023.